**TOTAL FOODS CORP., Plaintiff,**

v.

**WILFRAN AGRICULTURAL
INDUSTRIES, INC.,
Defendant.**

No. 96–CV–3685.

United States District Court,
E.D. Pennsylvania.

Nov. 1, 1996.

David W. Cromley, Morgan, Lewis & Bockius, LLP, Philadelphia, PA, for Plaintiff.

William R. Kane, Duane, Morris & Heckscher, Philadelphia, PA, for Defendant.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

### INTRODUCTION

In this diversity action, plaintiff Total Foods Corporation ("Total Foods"), has brought a breach of contract action against Wilfran Agricultural Industries, Inc. ("Wilfran"). Total Foods claims that Wilfran failed to pay for extra grade whey that it received pursuant to four purchase orders executed between the two parties in November 1995. Total Foods has now brought this summary judgment motion pursuant to Fed. R.Civ.P. 56(c). In its summary judgment motion, Total Foods also requests this court to issue a final judgment in its favor pursuant to Fed.R.Civ.P. 54(b). For the reasons that follow, we grant Total Foods' summary judgment motion and its request for final judgment.

### BACKGROUND

Total Foods brought a complaint against Wilfran to recover damages in excess of $52,-000. Total Foods claims that Wilfran failed to pay for extra grade whey Wilfran received from Total Foods in November 1995. Wilfran does not dispute that it received the goods in accordance with its purchase orders. Instead, Wilfran claims that it did not pay for the goods because Total Foods owes Wilfran damages in excess of $235,000 for failure to ship milk protein concentrate ("milk protein") that Wilfran had previously ordered in December 1994. Wilfran claims that it is entitled to set-off the damages Total Foods owes it for the milk protein against any damages it may owe Total Foods for the extra grade whey.

Accordingly, Wilfran asserted a breach of contract counterclaim against Total Foods for damages in excess of $235,000, claiming that Total Foods failed to deliver the quantities of milk protein, and that Wilfran had to procure substitute goods at a higher price than that bargained for with Total Foods. Wilfran further claimed that it was unable to obtain all of the milk protein it required and that as a result, it suffered additional damages. Total Foods then brought this summary judgment motion.

In its summary judgment motion, Total Foods argues that it is undisputed that it and Wilfran executed purchase orders for the whey, that Wilfran received and accepted the extra grade whey, and that Wilfran failed to pay for the shipment. Therefore, Total Foods argues, there are no outstanding factual issues to be resolved. Furthermore, Total Foods claims that a buyer can only deduct damages resulting from a seller's breach if the damages and the breach are part of the same contract. Since the contract for the extra grade whey is separate from the contract for the milk protein, Total Foods argues that Wilfran's defense must fail as a matter of law.

Wilfran points out that Total Foods had alleged that it was excused from providing the milk protein as a result of Wilfran's late payments of a third set of transactions predating December 14, 1994. Apparently, in a letter dated March 10, 1995, Total Foods informed Wilfran that it intended to alter its commitment to provide Wilfran with the milk protein because Wilfran had allegedly failed to fulfill its payment obligations in other transactions. Furthermore, Mr. Heine, Total Foods' vice president, admitted in his deposition that the payment problems referenced in the March 10th letter actually involved another series of transactions between the two parties, other than the milk protein and extra grade whey transactions. In addition, in Total Foods' answer to Wilfran's counterclaim, Total Foods alleges that Wilfran's failure to pay for goods it had received prevented it from taking further delivery of the products it had ordered.

Wilfran therefore claims that Total Foods cannot claim in its summary judgment motion that the contracts are separate, while asserting in its defense to the counterclaim that the transactions are interrelated. According to Wilfran, Total Foods has created an issue of fact as to whether the transactions are separate or interrelated. Wilfran

also claims that Total Foods has ignored Wilfran's other affirmative defenses in this case, namely that (a) the complaint is too vague to state a claim upon which relief can be granted, (b) the plaintiff is estopped from asserting a claim for damages against the defendant, and (c) the plaintiff's claims are barred by its violations of duties of good faith and fair dealing under the Uniform Commercial Code ("UCC").

## DISCUSSION

### I. *Summary Judgment*

Federal Rule of Civil Procedure 56(c) authorizes the court to grant summary judgment if there is no genuine material issue of fact. In deciding the motion, the court is constrained to draw all reasonable inferences in favor of the non-moving party. *Gans v. Mundy*, 762 F.2d 338, 340 (3d. Cir.1985). If a reasonable jury could find in favor of the non-moving party, summary judgment will not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Rather, the summary judgment standard requires the moving party to show that the case is so one-sided that it should prevail as a matter of law. *Id.* at 252, 106 S.Ct. at 2512. Nevertheless, the non-moving party must raise more than a scintilla of evidence in order to overcome a summary judgment motion. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir.1989). Further, the non-moving party cannot survive a summary judgment motion by relying on unsupported assertions. *Id.*

 The question of whether contracts are separate or interrelated is one of law, not fact. *Hellendall Distributors, Inc. v. S.B. Thomas Inc.*, 559 F.Supp. 573, 574 (E.D.Pa. 1983); *Carlisle Corp. v. Uresco Construction Materials*, 823 F.Supp. 271, 274 (M.D.Pa. 1993). Furthermore, there is no right of set-

off under the UCC unless the breaches occurred as part of the same contract. 13 Pa.Cons.Stat.Ann. § 2717; *Carlisle*, 823 F.Supp. at 275. In addition, the UCC displaces the common law with respect to a claim to the right of set-off. *Id.*

 In this case, Total Foods and Wilfran entered into an agreement on December 19, 1994 that Total Foods would ship 2,640,000 pounds of milk protein to Wilfran throughout 1995. In November 1995, Total Foods and Wilfran executed four separate purchase orders obligating Total Foods to sell Wilfran extra grade whey. The two contracts are clearly separate.[1] They concern different subject matter, were executed in different years, and have different terms. *Construction Aggregates, Ltd. v. Joseph Paolino & Sons, Inc.*, 1990 WL 79411 (E.D.Pa.1990). Since the contracts are separate, Wilfran has no right of set-off.

 Wilfran argues that Total Foods should be estopped from claiming that the contracts are separate because Total Foods previously claimed that they were interrelated.[2] Wilfran points to the March 10th letter, Mr. Heine's deposition testimony, and Total Foods' answer to Wilfran's counterclaim. Yet Wilfran also admits that in those three instances Total Foods was claiming that it was asserting a right of set-off under the milk protein contract against other transactions predating December 1994.

It appears then that Total Foods is claiming that the milk protein contract is interrelated with the transactions predating December 1994, not that the milk protein and extra grade whey contracts are related. This is a perfectly consistent position. It is completely plausible for Total Foods to claim that the milk protein and extra grade whey contracts are separate and there is no right of set-off with respect to those two, but that the milk

---

1. In addition, we note that even though we occasionally refer to the milk protein agreement and the extra grade whey agreement as two separate contracts, we are really only holding that the milk protein and extra grade whey agreements are unrelated. We do not reach the issue of whether the four purchase orders for the extra grade whey is really one large contract for extra grade whey or four separate contracts for extra

grade whey, since this issue is not material to the resolution of this motion.

2. Wilfran does not even argue that the extra grade whey purchase orders and the milk protein agreement are really one contract. Instead, Wilfran argues that Total Foods should be estopped from asserting otherwise based on Total Foods' alleged inconsistent positions.

protein contract is related to some other transactions between the two parties. Wilfran has not stated what those other transactions concerned, or why it is inconsistent for Total Foods to assert that the milk protein contract is related to them.[3]

Wilfran also claims that its right of set-off is not the only defense it asserted in its answer. Wilfran points out that it had also asserted in its answer that Total Foods' claims are too vague to state a claim upon which relief can be granted, that Total Foods should be estopped from asserting a defense, and that Total Foods breached its duty of good faith and fair dealing.

Wilfran has not briefed the last two issues in its response to Total Foods' summary judgment motion and so we are unable to determine what the basis of these claims are.[4] We therefore assume that Wilfran's estoppel argument is in essence the argument it develops in its response to the summary judgment motion, namely that Total Foods' alleged inconsistent positions with respect to whether the contracts are separate or related should bar it from prevailing in its summary judgment motion. We also assume that the basis of Wilfran's good faith claim concerns Total Foods' failure to honor its milk protein contract fully, and its assertion that Wilfran's prior conduct allowed Total Foods to alter its commitment with Wilfran for milk protein.

Both of these issues were dealt with above. We disposed of the argument that Total Foods' position was inconsistent, and we noted that we have not been presented with sufficient evidence to assess whether the milk protein contract is related to the other transactions referenced in the March 10th letter, Mr. Heine's deposition, or Total Foods' answer to the counterclaim. When the parties litigate the counterclaim, those issues will be resolved. Nevertheless, we will address Wilfran's contention that the pleadings are too vague to state a claim for relief.

Pleadings are vague only if a party cannot reasonably be required to respond to them. *Frazier v. SEPTA*, 868 F.Supp. 757, 763 (E.D.Pa.1994). Total Foods has clearly stated in its complaint that it executed purchase orders with Wilfran in November 1995, that it shipped the goods, that Wilfran received the goods, and that the price was $52,551. The complaint also states that Total Foods demanded payment and that Wilfran refused to pay. This is a simple, clearly written four page complaint. Wilfran has failed to identify what part of the complaint could possibly be considered to be vague. We therefore hold that Wilfran's claim that the complaint is vague is without merit.

## II. *Final Judgment*

Federal Rule of Civil Procedure 54(b) allows a court to issue final judgment as to one or more, but fewer than all, of the claims or parties, as along as the court finds that there is no reason for delay, and there is an express direction for such an action. Total Foods requests this court to enter final judgment in its favor. Wilfran contends that the facts surrounding the extra grade whey and the milk protein claims are so intertwined that they cannot be separated for purposes of allowing a final judgment.

In deciding whether to issue a final judgment, a court must consider whether the claims are separable, and whether an appellate court would have to determine the same issues twice if there were appeals. *Carlisle*, 823 F.Supp. at 276. If the claims involve

---

3. In fact, Mr. Heine's deposition suggests that the third set of transactions were also for milk protein. It is therefore understandable why Total Foods may have thought it could set-off the previous orders for milk protein against the subsequent deliveries of milk protein referenced in the March 10th letter. While we do not opine on whether Total Foods was correct in its belief, we note this fact only because it further illustrates to us that contrary to Wilfran's assertions, Total Foods has not held inconsistent positions such that it should be estopped from prevailing in its summary judgment motion.

4. For example, we are unable to say whether Wilfran is claiming that Total Foods breached the duty of good faith with respect to the extra grade whey contract, the milk protein contract, or some other transaction, and exactly what conduct on Total Foods' part Wilfran claims is a breach of this duty.

separate contracts, final judgment is usually appropriate. *Id.*

The underlying facts surrounding the extra grade whey agreement and the milk protein agreement are not related to each other. At most, Wilfran has alleged enough facts that would cause this court to conclude that the milk protein contract may relate to the other transactions predating December 1994. There is nothing to suggest that the milk protein contract is related to the extra grade whey contract. We therefore find that final judgment is appropriate.

## CONCLUSION

Total Foods' motion for summary judgment with respect to its complaint is granted but Total Foods' liability under Wilfran's counterclaim remains to be tried. Total Foods' request for final judgment is granted.

An appropriate Order follows.

### *ORDER*

AND NOW, this 1st day of November, 1996, upon consideration of Plaintiff's Motion for Summary Judgment, said motion is GRANTED.

FURTHER, Plaintiff's request for Final Judgment is GRANTED.